■ LEN FRANK, Respondent, v PARK SUMMIT REALTY CORP., Appellant.—Order, Supreme Court, New York County (Harold Baer, Jr., J.), entered December 21, 1989, which, *inter alia,* denied defendant's motion for summary judgment on its counterclaim for possession, modified, on the law and the facts, to grant the motion for summary judgment on the counterclaim for possession, and to remand for hearing to fix counsel fees payable to defendant, and in all other respects affirmed, without costs. Order, same court and Justice, entered June 1, 1990, denying defendant's subsequent motion for judgment of possession, reversed, and the order vacated, without costs.

The elderly plaintiff has been a rent stabilized tenant of a 17th floor apartment at the fashionable Mayflower Hotel on Manhattan's Central Park West, since 1975, initially under a three-year lease, and since then as a statutory month-to-month tenant. We affirm the disposition by the trial court of plaintiff's meritless claim for rent abatement, and the award to landlord of all rent arrears without reduction. The main issue on this appeal is presented by defendant-landlord's counterclaim for possession of the apartment by reason of the tenant's alleged sufferance and permission of a nuisance on the premises.

Plaintiff has, from time to time, permitted his sister and their 37-year old nephew (plaintiff's ward) to reside with him in the apartment. The well-educated nephew (master's degree from Columbia University) suffers from chronic schizophrenia, to the extent that he is prone to bizarre and disturbing—if not outrageous—behavior. We need not dwell on the tragic manifestations of this illness. Suffice it to say that complainants have detailed incidents of nudity in public places in the hotel; verbal abuse, profanity and vulgarity toward hotel guests and staff; hazard to health and safety of others by maintenance of unsanitary conditions and lack of attention to personal hygiene; and veiled threats of physical and sexual assault, as well as actual assaults on plaintiff and his sister. The incidents are numerous, well-documented, and for the most part not seriously contested herein. The nephew's condition can be contained with prescribed medication (prolixin), but even he would admit that when he fails to take his medication, he

becomes a walking time bomb. On several occasions the police have had to be summoned to take the nephew to the hospital for administering of medication he neglected to take. Since his inpatient hospitalization at Roosevelt Hospital in January 1989, the nephew has received voluntary, semi-monthly outpatient treatment at the 65th Street clinic.

Plaintiff testified at trial that the nephew was on his way back to normalcy, now that he was undergoing voluntary treatment. Defendant's witnesses testified that this was simply a posture of convenience, under threat of impending litigation. The nephew himself testified in May 1989, but the fact that he failed to show up for cross-examination was, according to defendant, an indication of his lack of sincerity and reliability.

Medical experts from both sides agreed that the nephew's prognosis for normal behavior hinged on whether or not he could be motivated to take his medication conscientiously. Defendant's position was that having already witnessed what happens when he doesn't take the medication—creating a nuisance, to say the least—it would be too risky, for all concerned, simply to trust the nephew to adhere to this course of treatment. Defendant's medical expert testified that the hotel was an inappropriate environment for the successful management of this patient.

Nevertheless, the IAS court, in a lengthy opinion, concluded that defendant had "not yet proven a nuisance" sufficient to justify plaintiff's eviction. The court found "evidence * * * of changed circumstances" (the latest commitment to a plan of medical treatment), raising doubt as to whether the problem would recur. (This conclusion ignored the chronic nature of the malady.) Instead, the court issued a stern warning to plaintiff that henceforth he would be held responsible for his nephew's publicly antisocial behavior and creation of unsanitary conditions, and would also be responsible for monitoring the nephew's medication schedule and attendance at the clinic for medical treatment. In the event of further incidents, the court would immediately entertain a renewal of the eviction proceeding.

Where the IAS court erred was in failing to recognize that defendant and its guests and staff had already been forced to endure an intolerable and continuing nuisance. Where a tenant permits a nuisance in a housing accommodation, the landlord is entitled to sue for recovery of possession (see, 9 NYCRR 2524.3 [b], identical to the comparable section of the former Code of the Metropolitan Hotel Industry Stabilization

Association, Inc.). Our ruling today is based not on proof in hindsight, but on a record of already documented nuisance that entitled defendant to immediate relief. The events which closely followed the court's ruling simply confirm the foregoing.

Defendant's psychiatric expert (conceded even by plaintiff's expert to have outstanding qualifications) had predicted that once the pressure of this litigation was removed, the nephew would revert to his familiar pattern of neglecting his medication, and that is precisely what happened. Four months after issuance of the IAS court's initial ruling, a new series of incidents arose, including punching his aunt and plaintiff in the face, screaming obscenities in public places, and physically molesting female staff and guests. When defendant took up the court's invitation and renewed the motion for eviction, plaintiff countered by having the nephew committed involuntarily to the psychiatric ward at Roosevelt Hospital, and arranged for his temporary transfer to a facility in Vermont for medical treatment. Plaintiff promised that the nephew, upon his return, would not be permitted to return to residence at the Mayflower Hotel. Instead, the plan was to acquire a midtown apartment where he could reside on his own, and still maintain his close family ties. These circumstances caused IAS to treat the landlord's application as moot. (This court has since been informed that the nephew has now been lodged at the West Side YMCA, within two blocks of the Mayflower Hotel.)

Fearful of the nephew returning anywhere in the neighborhood, where his elderly uncle and aunt would obviously be incapable of controlling his activities and behavior, defendant pressed for the ultimate relief. Once again, the IAS court temporized by issuing an ineffectual order, enjoining plaintiff simply from "directly or indirectly allowing [the nephew] to return to residence at the Mayflower Hotel". There was no injunctive provision against inviting or permitting the nephew to visit the premises or to use the lobby and restaurant facilities where several of the outrageous incidents had taken place. This latter order, like its predecessor, failed to address the realities of the situation presented.

A nuisance is a condition that threatens the comfort and safety of others in the building *(Novak v Fischbein, Olivieri Rozenholc & Badillo,* 151 AD2d 296, 299; 2 Rasch, New York Landlord and Tenant—Summary Proceedings § 30:60 [3d ed]). If the key to the definition is a pattern of continuity or recurrence of objectionable conduct *(see, Valley Cts. v Newton,*

47 Misc 2d 1028), defendant has long satisfied this test. The safety and domestic tranquility of the other tenants in the building, to say nothing of defendant's staff, demand the protection of the law in the form of the eviction of plaintiff, whose conduct permitted and condoned the nuisance, and whose tenancy itself, in all likelihood, will encourage the nuisance to continue unabated.

Each party to this appeal has argued vigorously for award of counsel fees under the apposite provision for same in the lease, and based upon the disposition in the trial court, a valid argument could be made for either party: defendant prevailed on the issue of back rent (concerning which the lease made explicit provision for attorneys' fees), while plaintiff carried the day on the overriding issue of right to possession (for which plaintiff argues an implied right of recovery under Real Property Law § 234). Under the circumstances, the trial court ruled that each side should bear its own legal expenses. Our ruling today renders the debate as to which party prevailed academic: defendant is now the clear victor on the two major issues litigated. The only question remaining is fixation of defendant's fair and reasonable counsel fees, including the services rendered in connection with this appeal. Solely on that issue we remand for a hearing and determination. Concur—Carro, J. P., Wallach and Kupferman, JJ.

Milonas, J., dissents in a memorandum as follows: In my opinion, the order being appealed herein should be modified only to the extent of restraining and enjoining plaintiff from either inviting or permitting his nephew to enter onto the subject premises and otherwise affirmed. Indeed, plaintiff has already agreed not to have his schizophrenic relative visit his home. The majority, however, have concluded that his nephew's bizarre and otherwise irrational behavior toward the staff, residents and guests at defendant's property justifies the eviction of this eighty year old plaintiff notwithstanding that any unpleasant incidents caused by plaintiff's disturbed relation have now become uncommon rather than persistent. The appropriate solution would be to enlarge the Supreme Court's injunction so as to keep the nephew entirely out of the building instead of punishing plaintiff for the nuisance created by the former in the past. If his nephew then chooses to appear, he may be treated as an ordinary trespasser, as opposed to an invitee, and the proper authorities notified to remove and/or arrest him.

In fact, there is some indication in the record that defendant-landlord's real objective is not so much to prevent a

nuisance but to terminate the lease and evict for financial reasons this rent-stabilized tenant, who has a history of withholding rent payments to secure repairs and other services to his apartment. Thus, the psychological condition of plaintiff's unfortunate nephew seems largely to present a convenient pretext for defendant to endeavor to accomplish what it could not otherwise achieve—that is, to recover the apartment in question.