[753 NYS2d 57]

DOMEN HOLDING Co., Appellant, v IRENE S. ARANOVICH, Respondent, et al., Defendants.

First Department, January 7, 2003

### APPEARANCES OF COUNSEL

*Ida Rae Greer* of counsel (*Lisa A. Wellman* and *Melinda P. Lisanti* on the brief; *Greer & Associates, P.C.,* attorneys), for appellant.

*Adele Bartlett* of counsel (*Lynn M. Kelly, MFY Legal Services, Inc.,* attorney), for Irene S. Aranovich, respondent.

**OPINION OF THE COURT**

Tom, J.P.

The issue is whether under these circumstances the conduct of the tenant's roommate, which consisted of three incidents over a five-year period, constituted a nuisance as that common-law term has been applied in landlord-tenant disputes in New York City and, if so, whether eviction of the tenants is warranted.

Defendant Irene Aranovich (Aranovich) is the tenant of record for this rent-stabilized apartment. Her brother, defendant Jorge Aranovich, is also a named lessee, although he does not presently reside there. Defendant Geoffrey Sanders, who is not a lessee, resides in the apartment with Aranovich. Plaintiff owns the building.

In October 2000, plaintiff served a notice of termination upon the Aranoviches alleging that they had permitted a nuisance to exist by condoning a pattern of antisocial and outrageous conduct by Sanders predicated on the following three incidents.

On August 30, 2000, Sanders allegedly directed profanity, racial slurs and threats of violence toward the doorman, Wayne Ellis.

On June 7, 1997, Sanders was allegedly involved in an altercation with Thomas DeRosa, the sight-impaired tenant of the apartment directly above Aranovich's. Apparently, Sanders went to DeRosa's apartment to complain about noise, then verbally harassed him and threatened him physically. DeRosa filed a complaint with the police alleging criminal harassment.

On November 8, 1995, an incident occurred between Sanders and the building superintendent. Police were summoned and a complaint was filed against Sanders. Not much further information can be gleaned from the record regarding this incident.

The notice advised Aranovich that they had to vacate the premises by October 16, 2000 as a result of her condoning Sanders' behavior. The notice also claimed that Sanders had persistently instigated arguments and altercations with others in the building—although such "others" are not identified.

Aranovich remained in possession beyond the termination date, and the owner commenced the present action for an ejectment. The owner moved for summary judgment on the complaint, and Aranovich cross-moved to dismiss the

complaint. The IAS court, focusing on the fact that only three instances over a five-year period were alleged, found that a nuisance was not established as a matter of law and dismissed the complaint. This appeal by the owner followed.

The Rent Stabilization Code allows eviction for the wrongful acts of a tenant, including nuisance. Although nuisance, as such, is not therein defined, the same provision allows for eviction when the tenant "engages in a persistent and continuing course of conduct evidencing an unwarrantable, unreasonable or unlawful use of the property to the annoyance, inconvenience, discomfort or damage of others, the primary purpose of which is intended to harass the owner or other tenants or occupants of the same * * * building * * * by interfering substantially with their comfort or safety" (9 NYCRR 2524.3 [b]). Case law subsequently has defined nuisance in similar terms. We have described nuisance as a continuing or recurrent pattern of objectionable conduct or a condition that threatens the comfort and safety of others in the building (*Frank v Park Summit Realty Corp.*, 175 AD2d 33, *mod on other grounds* 79 NY2d 789; *see also* 2 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 30:60 [4th ed]). Case law holds that a tenant may be held responsible for a nuisance created by other occupants of the tenant's premises which the tenant fails to take meaningful steps to curtail (*Frank, supra* [tenant's nephew]; *Acorn Realty v Torres*, 169 Misc 2d 670 [tenant's children]).

In evaluating whether a nuisance or similar condition is present in the case before us, we are bound by the facts specifically alleged in the notice of termination. It is well established that "the right to terminate the tenancy pursuant to the terms of the lease was dependent upon service of an adequate notice," which is a condition precedent to the termination of the landlord-tenant relationship (*Chinatown Apts. v Chu Cho Lam*, 51 NY2d 786, 787). Hence, in evaluating the legal sufficiency of the nuisance claim, only the allegations contained in the notice of termination should be considered; any other alleged claims or violations not specified in the notice must be disregarded. Thus, allusions to Sanders' alleged obnoxious conduct appearing in letters, briefs and elsewhere in the record cannot be used to establish the nuisance unless such incidents are clearly and adequately set forth in the notice; any deficiency in the notice cannot be retroactively cured in this manner (*cf. Chinatown Apts. v Chu Cho Lam, supra*).

As noted, nuisance is a statutorily authorized basis for eviction, but case law has construed nuisance narrowly. A finding

of nuisance has qualitative as well as quantitative aspects. The tort of nuisance generally arises from a continuous invasion of rights (*Nussbaum v Lacopo*, 27 NY2d 311). Single incidents of objectionable conduct generally will be insufficient to establish nuisance (*Metropolitan Life Ins. Co. v Moldoff*, 187 Misc 458, *affd* 272 App Div 1039). On one end of the spectrum, we have rejected eviction on the basis of one isolated incident which, though serious, did not merit eviction, especially when there was no indication that the tenant posed a continuing risk (*Matter of Spand v Franco*, 242 AD2d 210, *lv denied* 92 NY2d 802). Thus, when a tenant, in attempting suicide, allowed gas to escape into the kitchen on one occasion, no nuisance was presented (*Metropolitan Life Ins. Co. v Moldoff, supra*). By contrast, we found that health and safety ramifications arising from a tenant's chronic accumulation of newspapers and debris that posed a fire hazard, and the tenant's refusal to cure, constituted a basis for eviction (*Stratton Coop. v Fener*, 211 AD2d 559; *compare Smalkowski v Vernon*, 2001 NY Slip Op 40071 [U] [merely having bags of trash in apartment not sufficiently threatening to others' health and safety to warrant eviction, absent specific allegations regarding contents of bags and that they created a specified hazard]). At the other end of the spectrum, Appellate Term, First Department, has recently found recurrent and well-documented antisocial behavior by a tenant's children, including repeated instances of vandalism, urination on the premises, marijuana use in the hallways, and verbal abuse of other residents and actual assaults on building staff, to be sufficiently objectionable behavior substantially threatening the comfort and safety of others in the building, so as to constitute a nuisance warranting eviction (*Acorn Realty, supra*). Similarly, Appellate Term found that a record of unrebutted testimony by five tenants detailing repeated instances of the tenant's antisocial and abusive behavior over many years that had a detrimental impact on their own tenancies, supported Civil Court's finding of nuisance (*301 E. 69th St. Assoc. v Eskin*, 156 Misc 2d 122). We have also granted the landlord summary judgment where a tenant's schizophrenic nephew, who resided with the tenant, engaged in repeated public nudity on the premises, and repeatedly abused other residents with vulgar and profane language, was unsanitary, actually assaulted the tenant, and made veiled threats of sexual and physical assault against others, all of which were well documented (*Frank, supra*). We found that "[t]he safety and domestic tranquility of the other tenants in the building, to say nothing

of [the owner's] staff, demand[ed] the protection of the law in the form of the eviction of [the tenant]" (*id.* at 36). As articulated by the Appellate Term, First Department, the modern standard looks to whether the tenant's conduct interferes substantially with the comfort and safety of neighbors, as may be evident in the numerous complaints of other tenants who witnessed disturbances by, or even were threatened by, the objectionable tenant (*301 E. 69th St. Assoc. v Eskin, supra; accord Frank, supra*).

The necessary question before us is whether the three instances, to the extent they are documented in the notice of termination, either quantitatively or qualitatively constitute nuisance warranting eviction of the tenant.

I conclude that as a matter of law they do not. Quantitatively, the record includes only three documented incidents spread over a five-year period which do not constitute the continuous or chronic pattern of obnoxious conduct required to establish nuisance. Qualitatively, those incidents do not, either individually or in the aggregate, satisfy the exacting standard for nuisance. As noted, the record is unclear as to the circumstances regarding the November 8, 1995 incident and especially fails to clarify who instigated the altercation. The June 7, 1997 altercation arose from noise, including loud music, emanating from the apartment directly above respondent's apartment. The occupant addressed that noise and, as best as can be determined from the record, the discussion got heated. Mr. DeRosa is the only tenant named in the notice of termination to have had a confrontation with Sanders. The August 30, 2000 altercation, over three years later, was also characterized by a heated argument in which the occupant might have acted boorishly, but not in a manner as to constitute a nuisance, as that wrongdoing has been delineated by case law. Hence, I would conclude that the Supreme Court decision was legally sound, and properly reasoned, and scrupulously adhered to the record.

Finally, my greater concern in this case is with precedent that we may inadvertently establish. In a noisy, densely populated municipality such as New York City, where tenants live in close proximity to each other, daily interactions and even altercations between residents are far more extensive than elsewhere. Occasional arguments among tenants, and between tenants and building staff, are not uncommon and are all part of life in a crowded metropolis. Against this backdrop, and the fact that this City continues to have a chronic shortage

of affordable apartments, a ruling that three arguments over a five-year period can escalate into a basis for eviction will have a chilling effect on the tenants in this City. It should be noted that Aranovich has been residing in this building for over 20 years and the only complaints against the tenants appear to be the incidents listed in the notice of termination.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered November 7, 2001, which denied plaintiff's motion for summary judgment on its complaint and for an order dismissing defendant-tenant's affirmative defense and counterclaim and granted defendant's cross motion for summary judgment dismissing the complaint, should be affirmed, without costs.

FRIEDMAN, J. (dissenting in part).

In this action for ejectment, Geoffrey Sanders resides with Irene Aranovich, a rent-stabilized lessee of apartment 7B at 301 East 73rd Street. Sanders is alleged in 1995 and 1997 to have been involved in conflicts at the building necessitating police intervention and resulting in the filing of criminal complaints. In August 2000, Sanders was involved in yet another incident that required police intervention and also resulted in a criminal complaint being filed. Two months later, plaintiff, the landlord of 301 East 73rd Street, served Aranovich with a notice of termination of her lease, asserting that Sanders' presence in the apartment was creating a nuisance. The issue presented by this appeal is whether these incidents, taken together, may support an action for ejectment premised on nuisance. The majority, troubled by the lapses of time between incidents, concludes that, as a matter of law, they may not. Since I do not agree with this conclusion and believe that there is an issue of fact as to whether Sanders' conduct constitutes a nuisance, I respectfully dissent.

The origin of this action lies in an incident which occurred on November 8, 1995, as documented by a police department incident information slip. As a result of that incident, plaintiff's agent wrote to Aranovich stating the following:

> "I have been advised that an incident occurred on November 8, 1995, between a frequent visitor to your apartment and the building superintendent. In fact, the police were called to the building and a complaint was issued against [Sanders].

> "It is my understanding that this is not the first

incident regarding this individual in the building. As you are aware, you are responsible for the behavior and actions of your guests. This incident last night is inappropriate and threatening to the welfare of others. Should another incident occur, please be advised that legal proceedings will be immediately initiated."

While the letter spoke of legal proceedings in the event of another incident, the next incident did not lead to any proceedings. It was only after two further incidents that plaintiff took action by serving Aranovich with the notice of termination.

The notice alleges three incidents in which Sanders subjected others lawfully within plaintiff's building to plainly intolerable conduct. Sanders' conduct is alleged to have included threats of physical violence and shouted profanity, insults and racial epithets. Specifically, the notice recounts the aforementioned November 1995 incident, as well as the following two incidents:

(1) a June 1997 incident in which Sanders allegedly verbally abused and physically threatened the visually impaired tenant (DeRosa) of another apartment, whom Sanders complained had been making excessive noise, resulting in a call to the police and the tenant's filing a criminal harassment complaint against Sanders; and

(2) an August 2000 incident between Sanders and the building's doorman (Ellis), to whom Sanders allegedly directed physical threats, profanity and racial epithets, resulting in a call to the police and another complaint against Sanders.

The record also contains affidavits from witnesses to the latter two incidents.

The majority's attempt to minimize Sanders' alleged conduct in these incidents is not borne out by the record. Contrary to the majority's characterization of the June 1997 incident between Sanders and DeRosa as simply a "discussion [that] got heated," the notice of termination and DeRosa's affidavit both state that Sanders threatened to physically assault DeRosa, who has impaired vision. Similarly, contrary to the majority's assertion that the August 2000 incident between Sanders and Ellis involved nothing worse than "boorish[ ]" behavior by Sanders, Sanders is alleged to have subjected Ellis to shouted racial epithets and threats of physical injury. These accounts

of Sanders' conduct are not controverted by any competent evidence in the record.

In my view, the foregoing evidence raises a triable issue of fact as to whether Sanders' presence in the building has resulted in a recurring or continuing pattern of objectionable conduct threatening the comfort and safety of others in the building sufficient to constitute a nuisance (*see Frank v Park Summit Realty Corp.*, 175 AD2d 33, 35, *mod on other grounds* 79 NY2d 789). Although service of an adequate notice of termination is a prerequisite to a landlord's right to seek an eviction under the Rent Stabilization Code (*see Chinatown Apts. v Chu Cho Lam*, 51 NY2d 786; 9 NYCRR 2524.2 [b]), I am unaware of any support for the majority's view that the incidents alleged in plaintiff's notice of termination, and competently evidenced in the record, were legally insufficient either to support the notice of termination or to defeat the tenant's cross motion for summary judgment dismissing the complaint. Given the plainly intolerable nature of the conduct at issue, which occurred on more than one occasion and unmistakably manifested a proclivity for aggression against others (*cf. Metropolitan Life Ins. Co. v Moldoff*, 187 Misc 458, *affd* 272 App Div 1039), I believe that the incidents alleged are sufficient both to support the notice and to raise a triable question of fact as to whether Sanders' presence in the building created a nuisance. That question of fact should be answered by a trier of fact and not by this Court.

The majority's concern that allowing this case to go to trial would create precedent for evicting a tenant based solely on his or her involvement in "[o]ccasional arguments" is groundless. While I recognize that periodic disagreements between tenants, and between tenants and building staff, are a normal part of life in any apartment building, it is precisely the inevitability and frequency of interpersonal friction in a crowded metropolis that makes it imperative that individuals keep their behavior within broadly acceptable bounds of civility when conflicts arise. As a matter of plain common sense, behavior thrice warranting police intervention, as Sanders' alleged conduct did, is hardly the sort of "[o]ccasional argument[ ]" that falls within such bounds.

To reiterate, far from merely engaging in "arguments," Sanders allegedly made threats of physical violence, in one case against a partially disabled individual, and shouted racial slurs in a tense, face-to-face situation, conduct which necessitated police intervention. The allegations, which Sanders has

not controverted, are that he initiated the threats of violence and racial name-calling in each incident. Although the majority warns that allowing a landlord to seek eviction based on these facts might have a "chilling effect," it seems to me that the only "chilling effect" would be on behavior that plainly crosses the line of what residents should be required to tolerate among those living in the same building. Moreover, the majority, by its affirmance, may inadvertently send the unfortunate message that the conduct in which Sanders allegedly engaged must be tolerated.

To the extent the majority bases its position on the fact that the alleged incidents were "spread" over a multiyear period, I fail to see how conduct of the kind at issue becomes tolerable if it is alleged to have occurred only intermittently over a number of years. The instances of such behavior alleged here are enough to establish a pattern of intolerable conduct supporting a reasonable inference that Sanders will pose a danger of similar outbursts from time to time, with the consequence of a constant risk of physical injury to others in the building, for as long as his residency continues. Once the third incident occurred, the landlord acted almost immediately to commence this proceeding. I do not believe, as the majority apparently does, that the landlord could not take action to protect the other residents of the building and its personnel until there was a fourth or fifth incident. Accordingly, I would modify to deny the tenant's cross motion for summary judgment, reinstate the complaint, and remand for further proceedings.

Motion seeking stay and for other related relief denied.

MAZZARELLI and WILLIAMS, JJ., concur with TOM, J.P.; ANDRIAS and FRIEDMAN, JJ., dissent in part in a separate opinion by FRIEDMAN, J.

Order, Supreme Court, New York County, entered November 7, 2001, affirmed, without costs. Motion seeking stay and for other related relief denied.