Davis, J.
(dissenting). I respectfully dissent. The issue on this appeal is whether the conduct of tenant appellant Kathleen Morano during the six-year period from 1999 to the time of the commencement of the holdover proceeding rose to the level of actionable nuisance. I find that it did not. Therefore, in my opinion, the final judgment being appealed which, after a non-jury trial, awarded possession of the subject rent-stabilized apartment to the landlord, should be reversed and final judgment of possession should be awarded to the tenants.
This court’s authority to review the record developed at nisi prius and render a judgment warranted by the facts is as broad as that of the trial court (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492 [1983]; J.H. Taylor Constr. Corp. v Liguori, 5 Misc 3d 74 [App Term, 1st Dept 2004]). Exercising that authority here, and considering the testimonial and documentary evidence adduced at the 11-day trial, I find that, on balance, the rights of the other tenants to *64 be free of what my colleagues in the majority characterize as the “belligerent” and “aggressive” behavior of Ms. Morano do not outweigh the interests of the 63-year-old tenant Ms. Morano and her 61-year-old disabled husband David Morano in preserving their 28-year rent-stabilized tenancy. Forfeiture of this long-term tenancy seems too harsh a penalty to pay for the types of behavior related in the trial testimony which, while rude, annoying and bothersome, did not materially jeopardize the safety, health or well-being of the other tenants or the building staff.
It is well established by the Rent Stabilization Code and case law that a tenancy may be terminated when a tenant creates a nuisance by engaging in a recurrent pattern of objectionable conduct that substantially threatens the health, safety and comfort of other building occupants (see Domen Holding Co. v Aranovich, 1 NY3d 117, 124 [2003], citing Frank v Park Summit Realty Corp., 175 AD2d 33, 34 [1st Dept 1991], mod on other grounds 79 NY2d 789 [1991]). No strict quantitative test exists establishing how many incidents warrant a finding of nuisance. Rather the court must weigh both the quantitative and qualitative aspects of the particular set of facts in evaluating whether the high threshold of proof required for eviction has been met (see Domen; 160 W. 118th St. Corp. v Gray, 7 Misc 3d 1016[A], 2004 NY Slip Op 51881[U] [Civ Ct, NY County 2004]).
Here, the greater portion of the testimonial evidence from other tenants in the building and the building staff lacked specificity as to times and dates of incidents involving Ms. Morano. Although the picture developed from the testimony presents Ms. Morano as a contentious and unpleasant individual who became more difficult in response to a prior holdover proceeding brought against her, much of the behavior described must be relegated to the realm of personality conflicts or interpersonal friction which first developed in relation to Ms. Morano’s walking her three small but rambunctious dogs. As such, the reported incidents must be deemed a reality of everyday urban life to be tolerated in the crowded circumstances of a teeming metropolis. Frustrations attendant to the various predilections accompanying city life do not alone warrant a finding of nuisance.
In any event, Ms. Morano’s feelings of persecution were not entirely without substance in reality. In advance of the prior holdover proceeding and continuing thereafter, the building *65 staff were instructed to keep a log of any interactions with Ms. Morano. Moreover, as the trial court recognized, a neighboring tenant and attorney, Charles Scott Lent, spearheaded an effort to build the nuisance case against Ms. Morano. Mr. Lent became increasingly angry and threatening in reaction to the barking of Ms. Morano’s dogs and went so far as to post a complaint on Ms. Morano’s door and copy all of the neighboring apartments with his complaint. Mr. Lent admittedly provoked some of the confrontations with Ms. Morano as did another neighbor who was disturbed by Ms. Morano’s eccentric behavior in collecting newspapers from the trash rooms. Additionally, while my colleagues in the majority make reference to the police being called on two occasions in response to Ms. Morano’s conduct, one of the phone calls to the police was initiated by a neighbor who acknowledged being heavily medicated at the time of the incident and appeared to have responded in a manner substantially out of proportion to the circumstances of a verbal conflict in which there was no threat of a physical altercation. The second call to the police was initiated by Mr. Lent who believed that Ms. Morano had stolen laundry he had left in a dryer in the laundry room of the building. Again, the involvement of law enforcement seemed an exaggerated response to a relatively minor incident. There is nothing in the record to indicate that criminal charges were filed against Ms. Morano with respect to either incident.
In sum, in contrast to the majority, I do not find under the circumstances of this case that Ms. Morano’s behavior constituted the type of continuous invasion of rights necessary for a finding of nuisance. The law disfavors forfeiture of tenancies except under exceptional circumstances which do not exist in the present matter (see J. N. A. Realty Corp. v Cross Bay Chelsea, 42 NY2d 392 [1977]; CHI-AM Realty Inc. v Guddahl, 7 Misc 3d 54, 58 [App Term, 2d Dept 2005]). I mean in no way to condone Ms. Morano’s behavior, but simply conclude that in the context of this case the testimonial evidence does not either qualitatively or quantitatively meet the high threshold for a finding of nuisance.
McReon, EJ., and Heitler, J., concur; Davis, J., dissents in a separate opinion.