642-654 Whippersnapper LLC, -Respondent, 
against
Joseph Mahoney, Respondent-Tenant-Appellant.



Tenant appeals from an order of the Civil Court of the City of New York, Bronx County (Steven Weissman, J.), dated September 15, 2017, which denied his motion to vacate a final judgment of possession and a warrant of eviction in a holdover summary proceeding.




Per Curiam.
Order (Steven Weissman, J.), dated September 15, 2017, modified to the extent of temporarily staying execution of the warrant of eviction and remanding the matter to Civil Court for further proceedings consistent herewith; as modified, order affirmed, without costs.
No basis was shown to vacate the stipulations of settlement entered into by tenant's guardian ad litem [GAL]. The record shows that the GAL attempted to help his ward during the nuisance proceeding by obtaining extensions of time to cure the "Collyer"-type condition in the subject apartment. Tenant failed to meet his burden of showing that the GAL either inadvisedly entered into those stipulations or failed to look out for his best interests (see Matter of Prospect Union Assoc. v DeJesus, 167 AD3d 540 [2018]).
However, since an article 81 guardian has subsequently been appointed for tenant, and said guardian has performed a heavy duty cleaning with extermination services, and indicated that home care services are in place to assure that its ward has regular assistance to maintain the apartment in an appropriate sanitary condition, we temporarily stay execution of the warrant and remand the matter for further proceedings in accordance with DeJesus, id., and Matter of Strata Realty Corp. v Pena, 166 AD3d 401 (2018). In DeJesus, the Appellate Division, First Department, held:
The appointment of an article 81 guardian for tenants sufficiently establishes that these tenants are "handicapped" within the meaning of the [Fair Housing Act], leading us to consider whether they are entitled to a reasonable accommodation. What is reasonable varies from case to case, because it is necessarily fact-specific .... The overarching guiding factor, however, is that a landlord is obligated to provide a tenant with a reasonable accommodation if necessary for the tenant to keep his or her apartment. The refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford the handicapped individual equal [*2]opportunity to use and enjoy a dwelling is a discriminatory practice. A landlord does not have to provide a reasonable accommodation if it puts other tenants at risk, but should consider whether such risks can be minimized.
(DeJesus, 167 AD3d at 543 [emphasis supplied; internal brackets, citations and quotations omitted]).
In accordance with DeJesus, the circumstances now before us warrant a hearing on whether tenant is entitled to a permanent stay of eviction as an accommodation. "More narrowly, the issue is whether, with the involvement of the article 81 guardian and its management of [his] affairs, tenant[] can fulfill [his] lease obligations and avoid eviction" (id. at 544). Housing Court should "consider whether with ongoing supportive services and suitable monitoring tenant [] can continue to live an orderly existence in the apartment without harming or affecting [his] neighbors" (id.). We therefore "remand for a hearing to determine whether the accommodations proposed by the guardian are reasonable, whether they will curtail the risk of the nuisance recurring, and whether there should be a permanent stay of eviction" (id.).
Additionally, although Pena did not involve the extra protections to "handicapped" individuals set forth in the Fair Housing Act [42 USC 3604 (f)(2)(A)] which are applicable here, the equitable principles articulated by the Appellate Division in Pena also support the granting of a stay:
"Although [tenant] has had many opportunities to cure, in light of [tenant's] advanced age, long-term occupancy, and disability, the hardship that eviction would cause...and [tenant's] stated willingness to comply...we find, pursuant to principles of equity, that [tenant] should be afforded another opportunity to do so."
(Pena, 166 AD3d at 402).
In making our determination, we are mindful of the line of cases holding that a nuisance arising from conduct similar to that exhibited by the tenant here is not subject to cure or susceptible to the type of remedy we now order (see Frank v Park Summit Realty Corp., 175 AD2d 33 [1991], mod. on other grounds 79 NY2d 789 [1991] [IAS court, which relied upon the offending occupants' latest commitment to a plan of medical treatment to preclude eviction, erred in failing to recognize that landlord and other tenants "had already been forced to endure an intolerable and continuing nuisance ... [t]he safety and domestic tranquility of the other tenants in the building, to say nothing of defendant's staff, demand the protection of the law in the form of the eviction"]; Stratton Coop. v Fener, 211 AD2d 559 [1995] ["Appellate Term properly declined to remand this proceeding to Civil Court to fashion a remedy under article 81 of the Mental Hygiene Law ... [w]hile the court acknowledged its sympathy for the tenant, it properly balanced the rights of the other tenants whose health and safety were at risk'"]; Moses v Michetti, 210 AD2d 124 [1994] ["Nor would the mere fact of petitioner's mental illness require respondent [landlord] to make any additional 'accommodation', in light of the severity and continuing nature of petitioner's nuisance]). 
We recognize, however, that the First Department's recent holdings in DeJesus and Pena represent a clear departure from the approach previously taken in nuisance cases such as the one before us. While the protection of the premises and the other tenants who reside therein remains [*3]paramount, serious efforts must be undertaken to examine "whether such risks can be minimized" (DeJesus, 167 AD3d at 543), to thus afford a reasonable accommodation to a physically or mentally disabled tenant, even for one whose conduct has previously been highly problematic. Accordingly, we remand the matter to the Housing Court to determine whether the services put in place by the Article 81 guardian will curtail the risk of the nuisance recurring, thereby minimizing the risk to other tenants (see DeJesus, 167 AD3d at 543). Here, pursuant to Pena, the Housing Court should also consider equitable principles in determining whether to provide the tenant an opportunity to cure, assessing factors such as the tenant's advanced age, disability, the hardship that eviction would cause, and his long-term tenancy of over 50 years at the subject premises (see Pena, 166 AD3d at 402).
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
I concur I concur I concur
Decision Date: April 08, 2019