[—— NYS2d ——]

PERIPHERY LOUNGEWEAR, INC., Appellant, v KANTRON ROOFING CORPORATION, Defendant, and WILLIAMS & COMPANY et al., Respondents.

First Department, June 22, 1993

APPEARANCES OF COUNSEL

*Robert Jupiter* of counsel, New York City *(Louis C. Pulvermacher, P. C.,* attorney), for appellant.

*Elliott Zucker* of counsel, New York City *(Gordon & Silber, P. C.,* attorneys), for Williams & Company, and another, respondents.

### OPINION OF THE COURT

SULLIVAN, J. P.

On November 17, 1986 Tranel, Inc., as owner, entered into a written lease with Naftali Realty Inc. for the entire rentable area of the top (twelfth) floor of 135 Madison Avenue, in Manhattan, for a 12-year-and-11-month term commencing February 1, 1988. Naftali thereafter entered into a sublease of the demised premises with Periphery Loungewear, Inc., the plaintiff herein, incorporating therein by reference the terms of its lease (overlease) with Tranel. In signing the sublease, plaintiff acknowledged that it "ha[d] read and is familiar with the terms of the overlease."

Article 72 of the overlease required the tenant to keep in force "public liability and property damage" insurance with

minimum amounts of $500,000/$500,000 and $100,000, respectively, covering the landlord's interest and naming it as an insured. Article 73 was a waiver of subrogation clause which provided that "[t]o the extent that such insurance policies shall not be invalidated due to the following, the Landlord and the Tenant and all parties claiming under them hereby mutually release and discharge each other from all claims and liabilities arising from or caused by any hazard covered by insurance on the leased property, or covered by insurance in connection with property on or activities conducted on the leased property, regardless of the cause of the damage or loss."

Article 4 of the overlease provided, insofar as is relevant, that "there shall be no allowance to the Tenant for a diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof."

After execution of the Tranel/Naftali lease and on December 24, 1987, prior to taking occupancy, plaintiff gave notice of a leaking roof to Williams & Company, the managing agent, which engaged Kantron Roofing Corporation to install a new roof. Thereafter, between mid-August and mid-September 1988 and after plaintiff had taken occupancy on or about July 8, 1988, there were several heavy rainfalls which allegedly caused large quantities of water to leak from the roof into plaintiff's top-floor premises, causing damage and a complete disruption of normal business activities. Plaintiff was insured for the damage to its personal property from the flooding but had no coverage for its losses due to business interruption.

Plaintiff thereafter brought this action against Kantron, alleging defective work in the repair and resurfacing of the roof, Williams and Tranel, alleging negligent supervision of that work, and Naftali as landlord. Williams and Tranel moved and Naftali cross-moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint, asserting as a basis therefor the waiver of subrogation clause, article 73. When plaintiff, which originally had sought to recover for property damage as well, ultimately limited its claim to the recovery of business interruption loss, the moving defendants asserted the exclusion under article 4 for injury to business. The IAS Court granted both the motion and cross motion, relying upon the waiver of

subrogation clause in determining that plaintiff's claims for business interruption loss were barred. This appeal, which, as limited by plaintiff's brief, challenges the dismissal of the complaint against Tranel and Williams & Company only, followed. We affirm, but for different reasons.

Although General Obligations Law § 5-321* deems any agreement exempting a lessor from liability for "damages for injuries to person or property caused by or resulting from the negligence of the lessor" in the operation or maintenance of the demised premises or the building containing said premises as void and unenforceable, waiver of subrogation clauses, absent any indication of overreaching or unconscionability, have been upheld as valid and enforceable. *(See, Interested Underwriters v Ducor's, Inc.,* 103 AD2d 76, 77, *affd* 65 NY2d 647.)* "Such clauses are viewed as a device by which the parties merely allocate the risk of liability between themselves to third parties through insurance." *(Supra,* at 77.)* Under the lease in question, plaintiff was required to obtain both "public liability and property damage" insurance. Since plaintiff was not obligated to obtain business interruption insurance, it argues, it may look to the landlord, assuming it can show liability, to recover for that species of damages.

■ Article 72 of the lease required plaintiff to carry public liability and property damage insurance. It was not required to carry business interruption coverage—the only loss for which it seeks recovery—nor did it. Thus, under the plain terms of article 73, the waiver of subrogation applies only as to "public liability and property damage" claims.

While property damage is not defined in either article 72 or 73 of the lease, it has a well-understood meaning with respect to insurance coverage as referring to tangible property rather than intangible property rights such as business interruption. The Insurance Law, for instance, makes a clear distinction between property damage, real or personal, and business interruption insurance. *(See, e.g.,* § 3403 [a] [3]; § 5401 [c] [4].)* Had the landlord intended to obtain a more extensive waiver

---

* General Obligations Law § 5-321 provides: "Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable."

of the subrogation claims that could be asserted against it, it could have required that plaintiff obtain business interruption insurance. It did not.

Moreover, if a loss due to business interruption were a species of property damage and the landlord's liability therefor excluded by virtue of the waiver of subrogation clause, there would be no need to replicate that exclusion in the article 4 exculpatory clause. Thus, even if the waiver of subrogation clause be construed to include not only "claims and liabilities arising from or caused by any hazard covered by insurance," as article 73 specifies, but, as well, claims arising from perils that should have, under the terms of the lease, been insured, a business interruption claim would not be barred because it was never within the contemplation of the waiver of subrogation clause and article 72 of the lease, in conjunction with which the former must be read.

■ Notwithstanding the inapplicability of the waiver of subrogation clause to a claim of loss for business interruption, plaintiff's business interruption claim is nonetheless barred by virtue of article 4 of the lease, which excludes "liability on the part of Owner by reason of * * * injury to business arising from Owner, Tenant or others making or failing to make any repairs * * * to any portion of the building or the demised premises." On its face and by its plain meaning, this provision bars the claim. Although raised, the IAS Court never reached the issue.

■ Plaintiff's only countervailing argument is that article 4 is in direct violation of General Obligations Law § 5-321, which declares void as against public policy any clause in a lease exempting a landlord from liability for "injuries to * * * property." If we accept plaintiff's argument that "injuries to * * * property" include loss due to business interruption, then General Obligations Law § 5-321 might very well invalidate article 4 of the lease. But as already noted, from the perspective of insurance coverage, the concept of business interruption loss is one wholly distinct and separate from property damage.

It bears noting that plaintiff, in arguing against the waiver of subrogation clause as constituting a bar to its business interruption claim, has consistently claimed that the term "property damage" does not encompass claims for business interruption loss and thus the clause is inapplicable. On the other hand, plaintiff would have this Court accept the argu-

ment that General Obligations Law § 5-321 invalidates article 4 of the lease because the term "injuries to * * * property" was meant to encompass business interruption loss. Plaintiff cannot have it both ways.

Accordingly, the order and resettled order of the Supreme Court, New York County (Karla Moskowitz, J.), entered on or about June 29, 1992 and November 9, 1992, respectively, dismissing the complaint against defendants Williams & Company, Tranel, Inc. and Naftali Realty Inc., should be affirmed, without costs or disbursements.

CARRO, MILONAS and ROSENBERGER, JJ., concur.

Order and resettled order, Supreme Court, New York County, entered on or about June 29, 1992 and November 9, 1992, respectively, affirmed, without costs or disbursements.