**POLYTECH, INC., Plaintiff–Appellee,**

v.

**AFFILIATED FM INSURANCE COMPANY, Defendant–Appellant.**

No. 93–1428.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1993.

Decided April 11, 1994.

William M. Lutz, Minneapolis, MN, argued, for appellant.

Louis J. Basso, St. Louis, MO, argued, for appellee.

Before HANSEN, Circuit Judge, LAY and BRIGHT, Senior Circuit Judges.

HANSEN, Circuit Judge.

Affiliated FM Insurance Company (Affiliated) appeals the district court's order granting summary judgment on Polytech's claim for payment on a business interruption insurance policy endorsement and denying Affiliated's motion for summary judgment on Polytech's claims for breach of contract. Affiliated argues that the district court erroneously concluded that the business interruption coverage was a statutory "valued policy" under Missouri law. Affiliated also contends that the district court erred in denying Affiliated's motion for summary judgment on Polytech's breach of contract claim. We reverse in part, affirm in part, and remand.

## I.

Polytech, Inc., was a manufacturer of cast acrylic plastic sheets (plexiglass) and was located in Owensville, Missouri. An explosion and fire completely destroyed Polytech's production facilities on July 22, 1988. Polytech was insured with Affiliated against loss or damage by fire, among other things, under a policy and its accompanying endorsements.

One of the endorsements to the insurance policy provided coverage to Polytech for business interruption losses resulting from fire. The endorsement, which described the terms of the business interruption coverage, covered Polytech's loss of "gross earnings" and "expenses" that result directly from the business interruption. Polytech filed a claim with Affiliated for business interruption coverage seeking the full coverage limits of $633,600. Affiliated refused payment on the claim.

Polytech filed a suit for breach of the business interruption endorsement contract and for vexatious refusal to pay the insurance proceeds. Affiliated moved for summary judgment arguing that Polytech's claim for business interruption losses was wholly speculative as a matter of law. Polytech resisted Affiliated's motion and filed its own motion for summary judgment arguing that it was entitled to judgment for the full policy limits as a matter of law because the business interruption coverage constituted a "valued policy" under contract principles or under Missouri statutory law.

The district court entered an order denying Affiliated's motion for summary judgment. The morning the trial was to begin, the district court granted Polytech's motion for summary judgment. The district court found that while the business interruption insurance coverage was not a "valued policy" under contract law, the coverage constituted a "valued policy" under "the plain language" of Mo.Rev.Stat. § 379.140. The district

court entered judgment for the full amount of the business interruption coverage in favor of Polytech.

The district court and the parties prepared to go to trial on the vexatious refusal to pay claim until Polytech filed a stipulation voluntarily dismissing that claim without prejudice. The district court then entered a final judgment and Affiliated appealed.

## II.

■ Affiliated first argues that the district court erred by finding that the Missouri "valued policy statutes" applied to estop Affiliated from contesting the value of Polytech's business interruption claim. This court reviews de novo the district court's construction of state law in a diversity case. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

■ Valued policies can be created under either contract principles or statutory law. *Huth v. General Accident & Life Assur. Corp., Ltd.*, 536 S.W.2d 177, 181 (Mo.Ct. App.1976). "In a valued policy, the value of the property insured is *agreed* upon by the parties. If a total loss of the insured property occurs, then the insurance company pays the stipulated value; the actual value is irrelevant." *Clark v. Aetna Cas. & Sur. Co.*, 778 F.2d 242, 247 (5th Cir.1985) (citing 6 J. Appleman & J. Appleman, *Insurance Law and Practice* § 3827 (1972)); *see also Omaha Paper Stock Co. v. Harbor Ins. Co.*, 596 F.2d 283, 287 (8th Cir.1979) (providing similar definition of valued insurance policy). Valued policies are said to precisely fix the risks and are analogous to liquidated damages provisions in other contracts. *Clark*, 778 F.2d at 247. Valued policies are distinguished from open policies which leave the final amount to be paid uncertain. *Id.*

■ The issue for us is whether the district court properly determined that the business interruption insurance Polytech held with Affiliated is a valued policy under Missouri statutory law. In Missouri there are three valued policy statutes: Mo.Ann.Stat. §§ 379.140, 379.145, & 379.160 (Vernon 1991).

"Sections 379.140 and 379.145 apply only to real property, and § 379.160 applies to both real and personal property." *Wells v. Missouri Property Ins. Placement Facility*, 653 S.W.2d 207, 210 (Mo.1983) (en banc) (citing *Duckworth v. United States Fidelity & Guar. Co.*, 452 S.W.2d 280, 282–85 (Mo.Ct.App. 1970)). When any of these valued policy statutes apply, the insurer is estopped from denying that the value of the insured property at the time the policy was written is equal to the amount of insurance for which the policy was written. *Wells*, 653 S.W.2d at 210.

■ The district court found that § 379.-140 applied in this case. That section provides:

> In all suits brought upon policies of insurance against loss or damage by fire ..., the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant....

Mo.Ann.Stat. § 379.140. Polytech argues that the very terms of the statute make it applicable here because this is a suit brought "upon [a policy] of insurance against loss or damage by fire...." *Id.* The district court agreed with Polytech, finding that the plain language of the statute made this business interruption policy a valued policy under Missouri law. Affiliated argues that section 379.140 does not apply here because it applies only to real property and business interruption losses do not qualify as real property. We agree with Affiliated.

Section 379.140 applies only to real property. Mo.Stat.Ann. § 379.145(2) (Vernon 1969) ("This and section 379.140 shall apply only to

real property insured.") [1]; *see also Wells*, 653 S.W.2d at 210 (noting the same limitation). "Real property" is defined in the Missouri statutes as real estate, lands, or premises. Mo.Ann.Stat. § 1.020(16) (Vernon 1969 & West Supp.1993). We find that the gross earnings and expenses which the business interruption coverage of the policy insures do not constitute real property. Hence, we conclude that the district court erred in applying section 379.140 in this case.

The only case that addresses this issue from any jurisdiction determined that business interruption insurance is a separate type of coverage which is outside of the scope of a valued policy statute. *Hudson Mfg. Co. v. New York Underwriters' Ins. Co.*, 33 F.2d 460 (7th Cir.1929). Polytech attempts to distinguish *Hudson* because the Wisconsin valued policy statute that the *Hudson* court interpreted was limited to real property. Polytech's reasoning is unpersuasive because that same restrictive limitation to real property is part of § 379.140, the statute relied on by the district court.

■ Polytech also argues that the district court's decision to treat the business interruption policy as a valued policy can be affirmed under the valued policy statute found at section 379.160(3), which applies to policies covering both real and personal property. Section 379.160(3) specifically provides in relevant part:

> that in all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property covering both real and personal property;
> ....

Polytech argues that its business interruption coverage should be treated as a policy insuring personal property pursuant to section 379.160(3). Affiliated argues that section 379.160(3) does not apply because coverage for business interruption losses does not constitute coverage for personal property.

While the district court placed, at most, minimal reliance on section 379.160(3) in finding that the policy was a valued policy under Missouri law, we nonetheless will address Polytech's argument because both parties have addressed the applicability of section 379.160(3) in their arguments to this court. We must determine whether coverage for business interruption constitutes coverage for personal property loss or damage for the purposes of section 379.160.

Personal property is defined in the Missouri Code as including "money, goods, chattels, things in action and evidences of debt." Mo.Ann.Stat. § 1.020(12) (Vernon 1969 & West Supp.1993). Hence, personal property includes both tangible personal property (i.e., goods and chattels) and intangible personal property (i.e., things in action). *See Norris v. Norris*, 731 S.W.2d 844, 845 (Mo.1987) (en banc) ("Personal property can be either tangible or intangible."); *McDougal v. McDougal*, 279 S.W.2d 731 (Mo.Ct.App.1955) (finding under predecessor definitional statute that term "personal property" includes all property which is not real property); *see also* Mo. Const. art. X, § 4(a) (dividing personal property into tangible and intangible categories for tax purposes); Mo.Ann.Stat. § 137.015 (Vernon 1988) (same).

■ Insurance for business interruption losses is arguably a policy covering intangible personal property losses. "[T]he purpose of a business interruption policy is to indemnify the insured 'for loss caused by the interruption of a going business consequent upon the destruction of the building, plant, or parts thereof.'" *Ramada Inn Ramogreen, Inc., v. Travelers Indem. Co. of Am.*, 835 F.2d 812, 814 (11th Cir.1988) (quoting 1 G. Couch, *Couch on Insurance* § 1:28 (2d ed. 1984)). Protecting against business interruption loss is similar to protecting the going concern value of a business, which is treated as a property interest similar to goodwill in Missouri. *See Hanson v. Hanson*, 738 S.W.2d 429, 436–37 (Mo.1987) (en banc) (noting that going concern value and goodwill are nearly

---

**1.** Section 379.145 deals with property insured by more than one company and applies in conjunction with 379.140 in those situations.

impossible to separate and that going concern value is a component of property) (citations omitted); *see also City of St. Louis v. Public Serv. Comm'n,* 341 Mo. 920, 110 S.W.2d 749, 770–71 (1937) (treating going concern value as a separate quantifiable element of property valuation). Missouri courts generally have treated going concern value and goodwill value as intangible property interests. *See Flarsheim v. Twenty Five Thirty Two Broadway Corp.,* 432 S.W.2d 245, 257 (Mo.1968); *Schneider v. Schneider,* 347 Mo. 102, 146 S.W.2d 584, 589 (1941).

Such an expansive reading of "personal property" under section 379.160 is in our view, however, not permissible. The definitional section of the Missouri statutes specifically states that the definitions provided in section 1.020 should be used when interpreting a statute "unless otherwise specifically provided or unless plainly repugnant to the intent of the legislature or to the context [of the statute]." Mo.Ann.Stat. § 1.020 (Vernon 1969 & West Supp.1993). For the following reasons, we hold that treating business interruption insurance coverage as personal property coverage under the valued policy statute in section 379.160(3) would be reading the statute out of context and repugnant to the intent of the legislature.

First, business interruption insurance coverage and personal property insurance coverage are widely considered to be separate and distinct forms of insurance coverage. Business interruption "is a separate interest which may be specifically insured, but which is not covered by general property loss or damage ... policies." Appleman at § 2329, p. 323; *see also Periphery Loungewear, Inc. v. Kantron Roofing Corp.,* 190 A.D.2d 457, 460, 461, 599 N.Y.S.2d 554 (1993) ("The Insurance Law [in New York] makes a clear distinction between property damage, real or personal, and business interruption insurance" and noting further that "the concept of business interruption loss is wholly distinct and separate from property damage"). "Generally, the purpose of business interruption insurance is to protect the prospective earnings of the insured business." Appleman at § 2329, p. 324. Insurance policy endorsements for business interruption cover

indirect loss or damage but would not cover direct losses like "raw stock" or other contents of the premise (i.e.—personal property). Appleman at § 2329, p. 323; *see also* Annotation, *Business Interruption or Use and Occupancy Insurance,* 83 A.L.R.2d 885, § 4(a) (1962) (updated at Supp.1991 & Supp. 1993)) (section 4(a) entitled "Damage to physical property not covered").

■ In Missouri "[i]t is a fundamental precept of statutory interpretation that the legislature is presumed to act with knowledge of the subject matter and existing law." *Pfefer v. Board of Police Comm'rs,* 654 S.W.2d 124, 127 (Mo.Ct.App.1983) (citation omitted). We must then presume that the Missouri legislature was familiar with the distinction in insurance law between personal property insurance coverage and business interruption insurance coverage. Hence, we must assume that when the legislature referred to personal property policies in section 379.160 it did not intend to include business interruption policies and would have specified business interruption coverage if that is what it had intended. There is ample Missouri case law indicating that courts should hesitate to add terms to a statute that the Missouri legislature did not specify. *See, e.g., Cano v. Travelers Ins. Co.,* 656 S.W.2d 266, 271 (Mo.1983); *Wilson v. McNeal,* 575 S.W.2d 802, 810 (Mo. Ct.App.1978). We decline to do so here. Hence, read in the context of insurance law, the valued policy statute under section 379.-160(3) applying to personal property should not be interpreted to encompass business interruption insurance policies because they are so distinct from personal property policies.

■ Second, the Missouri courts have found that the measure of damages for the total destruction of personal property under section 379.160 "is the value fixed at the date of the policy, less *depreciation* from that date to time of the fire." *Duckworth v. United States Fidelity & Guar. Co.,* 452 S.W.2d 280, 285 (Mo.Ct.App.1970) (citation omitted) (emphasis added). We find that this depreciation requirement indicates that the term personal property under section 379.160 should be interpreted to mean only tangible "depreciable" personal property. Business inter-

ruption losses, that is future prospective earnings, like goodwill, are not depreciable interests in property because they do not have a limited useful life. *See Newark Morning Ledger Co. v. United States,* —— U.S. ——, ——, 113 S.Ct. 1670, 1681, 123 L.Ed.2d 288 (1993) (holding that while goodwill generally is not depreciable the test for whether intangible asset is depreciable is whether the asset can be valued and whether it has a limited useful life where the value diminishes over time). We find this lack of depreciability to be further indication that the Missouri legislature did not intend the valued policy statute under section 379.160 to extend to business interruption policies.

We conclude that none of the Missouri valued policy statutes were intended to extend to business interruption insurance policies. Accordingly, we reverse on this issue.

### III.

■ The second issue is whether the district court erred in denying Affiliated's motion for summary judgment. Affiliated moved for summary judgment arguing that Polytech's claim of business interruption damages is unsupported by the record and, as such, raises no genuine issue of material fact. Affiliated asserted that Polytech had previously run up significant losses and that its projected profits were unduly speculative. The district court found that despite the heavy burden Polytech would bear of ultimately proving its claim, Polytech had presented enough evidence to create a jury question.

■ We review the district court's summary judgment decision de novo using the same standards as the district court. *Commercial Union Ins. Co. v. Schmidt,* 967 F.2d 270, 271 (8th Cir.1992). Ultimately, we must determine if the moving party has established that there are no genuine issues of material fact and that the moving party is entitled to relief as a matter of law. *Id.* We agree with the district court that Affiliated

has failed to establish that there are no genuine issues of material fact.

As noted above, this business interruption policy endorsement insures Polytech against loss of gross earnings resulting from the business interruption. Affiliated argues that under the definitions in the policy, the coverage is essentially for lost profits. We have previously considered very similar language in business interruption policies and found that where there is a loss of gross earnings, the jury should award damages for the actual loss sustained, which is the difference between the net profit the business would have received without the interruption and the net profit actually received. *Western Am., Inc. v. Aetna Cas. & Sur. Co.,* 915 F.2d 1181, 1183–84 (8th Cir.1990); *Associated Photographers, Inc. v. Aetna Cas. & Sur. Co.,* 677 F.2d 1251, 1254 (8th Cir.1982). Hence, to recover damages, Polytech will need to prove a loss of net profits.

■ Under Missouri law, "[t]o obtain a damage award for lost profits at trial, [plaintiffs] must produce evidence that provides an adequate basis for estimating lost profits with reasonable certainty. Proof of actual facts which present a basis for a rational estimate of damages without resorting to speculation is required." *Manor Square, Inc. v. Heartthrob of Kansas City, Inc.,* 854 S.W.2d 38, 44 (Mo.Ct.App.1993) (citing *Chmieleski v. City Prod. Corp.,* 660 S.W.2d 275, 298 (Mo.Ct.App.1983)). Courts have viewed the recovery of such damages cautiously. *Chmieleski,* 660 S.W.2d at 298. Proof of loss of profits should include some assessment of income and expenses of a business at anterior times. *Brown v. McIBS, Inc.,* 722 S.W.2d 337, 341 (Mo.Ct.App.1986).

Both parties have provided a substantial evaluation of the potential income and earnings of Polytech had it continued to operate. Polytech presented substantial evidence on changes in its business operation and practices that it says would have resulted in future profitability.[2] Affiliated presented evidence

---

2. Polytech also now proffers the testimony of its accounting experts, Price–Waterhouse, who analyzed Polytech's operations and concluded that Polytech's business interruption loss would far exceed the $633,600 policy limits. Polytech ad-

mits that the deposition testimony of its experts was not before the district court before the court entered its ruling denying Affiliated's motion for summary judgment because the depositions had not been taken. However, Affiliated does not

from its accountants who concluded that Polytech would remain unprofitable and, therefore, would suffer no business interruption loss. We find that the conflicting evidence as to the existence of future earnings creates genuine issues of material fact.

Affiliated relies primarily on *Hampton Foods, Inc. v. Aetna Cas. & Surety Co.,* 601 F.Supp. 58, 60 (E.D.Mo.1984) *aff'd in relevant part,* 787 F.2d 349 (8th Cir.1986), in arguing that Polytech's evidence was too speculative as a matter of law. In *Hampton Foods,* the court granted summary judgment for the insured on the question of liability, but subsequently denied the insured's claim for lost profit damages because the business had never made a profit and the insured's expert made unrealistic projections of profits in the coming year. Affiliated contends this case is substantially similar because Polytech had been losing money and now projects unrealistic future profitability.

*Hampton Foods* is distinguishable for two reasons. First, the evidence in *Hampton Foods* indicated that the business had only been in existence two years and was unprofitable both years. Here, the evidence indicates that Polytech had been in business a number of years and had profitable years before falling on harder times more recently. Second, the district court in *Hampton Foods* did not decide the lost profits issue as a matter of law. The district court held additional proceedings on the issue of damages and made factual findings that the projections of the insured's expert were not realistic. We affirmed, holding that the district court's findings were not clearly erroneous. *Hampton Foods,* 787 F.2d at 353. Here, the, district court held no proceedings on the question of loss of gross earnings. Polytech has simply proffered evidence indicating that there have been substantial changes to the plant, which will result in increased profitability. We cannot conclude at this time, as a matter of law, that Polytech's evidence is either unrealistic or otherwise too speculative.

Moreover, we have previously observed that the issue of lost profits really comes down to a problem of proof, and the trial

dispute Polytech's representations to this court of

judge should evaluate the evidence as it comes in to determine if there is enough evidence to send the issue to the jury. *Handi Caddy, Inc. v. American Home Prod. Corp.,* 557 F.2d 136, 139 (8th Cir.1977). We find that is the appropriate approach and that this issue can be better evaluated under Missouri lost profit standards as the factual record is developed at trial.

Affiliated has failed to carry its burden of establishing that there are no genuine issues of material fact. Accordingly, we affirm the district court's denial of Affiliated's motion for summary judgment.

### IV.

We reverse the district court's determination that the business interruption policy is a valued policy under Missouri's valued policy statutes. We affirm the district court's denial of Affiliated's motion for summary judgment on the breach of contract claim and remand the case for trial on the breach of contract claim.