[800 NYS2d 664]

DUANE READE, Appellant, v 405 LEXINGTON, L.L.C., et al., Respondents.

First Department, August 4, 2005

APPEARANCES OF COUNSEL

*Pryor Cashman Sherman & Flynn LLP*, New York City (*Joseph Z. Epstein, David C. Rose* and *William L. Charron* of counsel), for appellant.

*Schulte Roth & Zabel, LLP*, New York City (*Robert M. Abrahams* and *Jeffrey P. Wade* of counsel), for 405 Lexington, L.L.C., respondent.

*Harrington, Ocko & Monk, LLP*, White Plains (*Kevin J. Harrington, Steven R. Kramer, John C. Mascari* and *Geraldine A. Cheverko* of counsel), for Tishman Speyer Properties, L.P. and another, respondents.

## OPINION OF THE COURT

NARDELLI, J.

In this appeal, we are asked to determine whether plaintiff Duane Reade waived its claims for lost profit damages pursuant to certain provisions in its lease with defendant landlord 405 Lexington, L.L.C., or whether such waiver falls within the ambit of General Obligations Law § 5-321, thereby rendering that waiver void as against public policy.

405 Lexington is the owner of the buildings on the block that is bounded by 42nd and 43rd Streets, and by Lexington and Third Avenues. In 1998, 405 Lexington hired defendant Turner Construction Company (Turner) as the construction manager for what plaintiff describes as a "massive construction project" at the Kent Building, which is designated as 666 Third Avenue, and the Chrysler Building, which is designated as 405 Lexington Avenue. Defendant Tishman Speyer Properties, L.P. (Tishman) is 405 Lexington's managing and leasing agent for 666 Third Avenue (the 666 building).

The scope of the renovation project required the relocation of a number of commercial tenants, including Duane Reade's then existing drug and variety store located on the north side of 42nd Street between Lexington and Third Avenues.* 405 Lexington and Duane Reade subsequently reached an agreement whereby the store would vacate the 42nd Street premises and move into commercial space in the basement and ground floor of the 666 building. The parties entered into a long-term lease agreement

---

* A second Duane Reade store, originally located on the southwest corner of Lexington Avenue and 42nd Street, was also required to relocate, due to the renovation, to an alternate site in the Chrysler Building. This store's move, lease and subsequent operation are not subjects of this appeal.

for that space in July 1998 (the lease) and the store subsequently opened for business in January 1999, at which time the renovation work on the 666 and Chrysler buildings was ongoing.

405 Lexington served Duane Reade with a notice of default, dated March 24, 1999, asserting that Duane Reade had violated the lease by, inter alia, failing to properly install a fire alarm system; installing poorly designed and inadequately lit displays; and failing to remove construction debris from the basement and boiler room of the building.

Duane Reade, in response, obtained a *Yellowstone* injunction in May 1999, and thereafter commenced the within action against 405 Lexington seeking a declaratory judgment declaring that it was not in default under the terms of the lease. 405 Lexington then served subsequent notices of default alleging various lease violations, and Duane Reade sought, and obtained, offsetting *Yellowstone* injunctions. Duane Reade, in addition, served supplements to the complaint which set forth additional causes of action and which named Tishman and Turner as defendants.

The appeal at bar concerns plaintiff's fourth cause of action, interposed against 405 Lexington and Tishman, and fifth cause of action, interposed against Turner, which assert, inter alia, that the renovation work was performed in a grossly negligent manner "border[ing] on criminal indifference," which drove away its customers due to the erection of scaffolding, the presence of construction debris and dust conditions, falling glass, and water leaks which formed inside the store. Duane Reade averred that the renovations had severely impacted the operation and profitability of the store and that had it known of the extent of the renovations at the time it entered into the lease, it would have required very different terms therein.

Defendant 405 Lexington moved for summary judgment dismissing various causes of action and by separate notice of motion, defendants Turner and Tishman moved to dismiss plaintiff Duane Reade's fourth and fifth causes of action. Duane Reade cross-moved for summary judgment on the complaint, and to dismiss the counterclaims and defenses asserted by 405 Lexington to the extent that they concerned certain alleged violations of the lease.

The motion court, in separate orders, granted defendants' motions to the extent of dismissing all of plaintiff's claims premised on Duane Reade's loss of business and customers, having concluded that General Obligations Law § 5-321 does

not void the waiver of business loss liability set forth in the lease. With regard to Tishman and Turner, the motion court added that Duane Reade had "effectively waived any claims for business losses, from landlord's indemnit[te]es, Tishman as its named agent under the terms of the lease and Turner as its contractor under the terms of a managing agent contract between those two parties." Duane Reade's cross motion was denied as the motion court found that neither Duane Reade, nor 405 Lexington, submitted sufficient competent evidence pertaining to the alleged defaults which would warrant summary relief. Plaintiff appeals and we now affirm.

Section 12.2 of the lease, entitled "Waiver of Subrogation," provides, in pertinent part, that: "Tenant acknowledges that *landlord shall not carry insurance on, and shall not be responsible for*, (a) damage to any Specialty Alterations, (b) Tenant's Property, and (c) *any loss suffered by Tenant due to interruption of Tenant's business*" (emphasis added).

Moreover, it is clear from a reading of the lease that Duane Reade and 405 Lexington intended to place a limitation on lost profits and business damages and that such limitation was specifically tied into construction activity. Section 13.6 of the lease, denominated "Landlord's Liability," provides, in relevant part:

> *"None of the Indemnittees* [which category specifically includes Landlord] shall be liable for any injury or damage to persons or property *or interruption of Tenant's business resulting from* fire or other casualty, any damages caused by other tenants or persons in the Building or by *construction of any private, public or quasi-public work*, or any defect in the Premises or in the Building . . ." (emphasis added).

It is settled that a contractual provision which limits damages will be enforced unless a special relationship exists between the parties, or a statute or public policy imposes liability despite the restrictions set forth in the contract (*Peluso v Tauscher Cronacher Professional Engrs.*, 270 AD2d 325 [2000]; *Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 192 AD2d 83, 88-89 [1993], *affd* 84 NY2d 430 [1994]). Moreover, the public policy of this State does not allow a party to insulate itself from grossly negligent conduct (*Sommer v Federal Signal Corp.*, 79 NY2d 540, 554 [1992]; *David Gutter Furs v Jewelers Protection Servs.*, 79 NY2d 1027, 1029 [1992]).

General Obligations Law § 5-321 provides that:

"Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property *exempting the lessor from liability for damages for injuries to person or property* caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable" (emphasis added).

Initially, we note that the causes of action at issue herein strictly seek recovery for business losses due to the construction, a point which plaintiff concedes. Such claims are "wholly distinct and separate from property damage" claims (*Periphery Loungewear v Kantron Roofing Corp.*, 190 AD2d 457, 461 [1993]). Accordingly, the waiver clause which shields the landlord from liability for such losses by requiring plaintiff to procure insurance does not violate General Obligations Law § 5-321 (*Automatic Findings v Allied Outdoor Adv.*, 214 AD2d 482, 482-483 [1995]).

Moreover, the clear import of section 12.2, whereby the owner was not required to obtain insurance against the interruption of the tenant's business, and of certain provisions in section 12.1, whereby the tenant was required to obtain "insurance against loss or damage by fire, and such other risks and hazards as are insurable under then available standard forms of 'all risk' property insurance policies" as well as business interruption insurance, "is that the landlord would not be liable for the tenant's business losses in the event an insurable event occurs" (*Cresvale Intl. v Reuters Am.*, 257 AD2d 502, 506 [1999]).

In sum, since, as plaintiff's chief operating officer stated in his deposition, plaintiff's claims of negligence against the owner are based solely on "lost customer transactions," the motion court properly concluded that General Obligations Law § 5-321 does not void the waiver of business loss liability set forth in sections 12.2 and 13.6 of the lease and plaintiff, therefore, is precluded from raising its negligence claims for such damages. The motion court also properly held that plaintiff had waived any claims for business losses against Tishman and Turner by virtue of section 13.6 of the lease.

Accordingly, the judgments of the Supreme Court, New York County (Louise Gruner Gans, J.), entered April 2 and September

23, 2003, which, respectively, dismissed plaintiff's fourth cause of action as against defendants 405 Lexington and Tishman, and the fifth cause of action as against defendant Turner, should be affirmed, without costs. Appeals from orders, same court and Justice, both entered March 3, 2003, should be dismissed, without costs.

ANDRIAS, J.P., ELLERIN, GONZALEZ and CATTERSON, JJ., concur.

Judgments, Supreme Court, New York County, entered April 2 and September 23, 2003, affirmed, and appeals from orders, same court, entered March 3, 2003, dismissed, without costs.