■ Duane Reade, Appellant, v Reva Holding Corp. et al., Respondents. [818 NYS2d 9]—

Order, Supreme Court, New York County (Faviola A. Soto, J.), entered July 25, 2005, which granted defendants' motion to dismiss the complaint, unanimously modified, on the law, to deny the motion insofar as it was addressed to the first, second, third, fifth, sixth, seventh, and eighth causes of action, such causes of action reinstated, and otherwise affirmed, without costs.

Plaintiff Duane Reade leases a store at 749 Broadway in Brooklyn from defendant Reva Holding Corp. (Reva). During the term of the lease, Reva hired a contractor, defendant F & S Construction, Inc. (F & S), to add a second story to the building. Although it is undisputed that Reva had authority under the lease to make such an addition, Duane Reade alleges that some of F & S's preparatory work for the project was performed in an unworkmanlike manner, thereby causing injury to Duane Reade. Specifically, it is alleged that F & S failed to properly cover and seal exploratory holes that it opened in the roof, which allegedly resulted in leaks into Duane Reade's store and, on at least two occasions, allegedly caused water pipes to freeze and burst. This action seeks recovery for the business interruption losses and physical property damage that Duane Reade allegedly has suffered as a result of such leakage and pipe bursting. To this end, Duane Reade asserts causes of action for breach of the lease and breach of the covenant of quiet enjoyment against Reva, and causes of action for negligence, nuisance and trespass against both Reva and F & S.

The IAS court granted defendants' motion to dismiss the complaint, pursuant to CPLR 3211 (a) (1) and (7), based primarily on three exculpatory provisions found in the lease. For

the reasons discussed below, we now modify to reinstate all causes of action except the one for breach of the covenant of quiet enjoyment.

## Lease Provisions Claimed to Bar This Action

The 15-year lease between Reva and Duane Reade, dated March 29, 1994, comprises a printed "Standard Form of Store Lease" and an attached typewritten rider, the latter of which controls (pursuant to articles 58 and 91 of the lease) in the event of a conflict between the two. The lease provisions the IAS court found to bar this action are: (1) article 4, captioned "Repairs"; (2) article 13, captioned "Access to Premises"; and (3) paragraph (i) (J) of article 47, captioned "Waiver of Subrogation" (hereinafter article 47 [i] [J]). Articles 4 and 13 are found in the printed part of the lease, and article 47 (i) (J) is found in the typewritten rider.

Article 47 (i) (J)

Article 47 of the lease, of which article 47 (i) (J) is a part, is captioned "Tenant Insurance Coverages." In pertinent part, article 47 provides as follows:

"47. TENANT INSURANCE COVERAGES—Effective as of the commencement date and thereafter throughout the term of this lease, Tenant, at its sole expense, shall maintain in full force and effect with insurance companies licensed to do business in the State of New York, the following insurance:

"(i) (A) Comprehensive general liability insurance for bodily and personal injury and property damage occurring on or about the demised premises . . . .

"(B) Fire and extended coverage insurance (contents broad form) on Tenant's personal property located in the demised premises in amounts reasonably deemed adequate by Tenant to fully insure such personal property . . . .

"(J) Waiver of Subrogation. Neither Owner nor Tenant shall be liable to the other for any business interruption or any loss or damage to property occurring in the building (including the demised premises), or in any manner growing out of or connected with the Tenant's use and occupation of the demised premises, the building or condition thereof, whether or not caused by negligence or other fault of the Owner or Tenant or their respective agents, employees, subtenants, licensees or assignees. The release in favor of Owner and Tenant contained herein, is in addition to, and not in substitution for, or in dimunition [sic] of the hold harmless and indemnification provisions hereof."

The portions of article 47 that are here omitted set forth various other requirements for Duane Reade's insurance coverage. This is indicated by the captions of the six subparagraphs immediately preceding article 47 (i) (J): "Named Insureds"; "Quality of Insurance"; "Primary Insurance"; "Blanket Policies"; "Noncancellable"; "Increased Insurance Risk." Similarly, the paragraphs following article 47 (i) (J) set forth additional requirements relating to Duane Reade's insurance coverage (e.g., Reva is to be named as an additional insured on all policies required by the lease, Reva is to receive prior written notice of the cancellation or material alteration of such policies, and Duane Reade shall not violate any conditions or provisions of such policies).

Contrary to defendants' argument, article 47 (i) (J) does not bar any part of this action because the lease does not require Duane Reade to fully insure itself against the business interruption and property damage losses for which it seeks recovery, and Duane Reade's insurance in fact does not cover such losses.[1] For the reasons discussed below, article 47 (i) (J), as a waiver of subrogation clause, does not preclude a suit to recover losses for which Duane Reade has not purchased, and was not required by the lease to purchase, insurance coverage.

Subrogation is the equitable doctrine that "allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse" (*Kaf-Kaf, Inc. v Rodless Decorations*, 90 NY2d 654, 660 [1997], citing *Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465 [1986]). Thus, a waiver of subrogation clause, by which the parties to a contract prospectively waive any claim each one's insurer might otherwise acquire against the other party by way of subrogation, "is necessarily premised on the procurement of insurance by the parties" (*Liberty Mut. Ins. Co. v Perfect Knowledge*, 299 AD2d 524, 526 [2002]). As another court has put it: "A waiver of subrogation clause implies that the parties are insured. If the

---

1. The only kinds of insurance the lease requires Duane Reade to purchase are comprehensive general liability coverage (article 47 [i] [A]), which is not relevant here, and "[f]ire and extended coverage insurance (contents broad form) on Tenant's personal property located in the demised premises in amounts reasonably deemed adequate by Tenant to fully insure such personal property" (article 47 [i] [B]). Although the latter provision does require Duane Reade to insure itself against personal property damage, the lease permits such coverage to be subject to a deductible, and Duane Reade alleges that the property damage at issue is within the deductible under its policy. Contrary to defendants' contention, the lease does not contain any requirement that Duane Reade insure itself against business interruption losses.

parties are not insured, there is no need to waive subrogation claims, which are brought by the parties' insurers." (*American Motorist Ins. Co. v Morris Goldman Real Estate Corp.*, 277 F Supp 2d 304, 308 n 3 [SD NY 2003] [applying New York law].)

From the foregoing, it follows that a waiver of subrogation clause in an agreement does not bar one party from suing the other to recover for a loss to the extent that such loss is not required by the parties' agreement to be covered—and, in fact, is not covered—by insurance. This principle is illustrated, for example, by the Court of Appeals' observation in *Kaf-Kaf* that the waiver of subrogation clause in that case would not have prevented the insured from "collect[ing] any portion of its damages *not* covered by insurance" (90 NY2d at 661 [emphasis added]). Similarly, in *Gap v Red Apple Cos.* (282 AD2d 119 [2001]), this Court held that each of two commercial tenants was entitled, notwithstanding the waiver of subrogation clause in its lease, to sue the landlord to recover the portion of its fire loss within the deductible under its insurance, since "the leases did not require the tenant to obtain fire contents coverage in any specified amount or, at all, for that matter" (*id.* at 124). We further observed: "While the parties to a commercial transaction are free to allocate the risk of liability to third parties through insurance and deployment of a waiver of subrogation clause, under the leases at issue the tenants were free to undertake the uninsured risk they did by assuming a substantial deductible. Having done so, there is no legal impediment to the tenants' seeking recourse for their uninsured loss from the landlord, assuming they can show liability therefor." (*Id.* [citations omitted].)[2]

It is true that the foregoing cases can be distinguished on the ground that they involved waiver of subrogation clauses that were expressly limited to insured claims. By contrast, article 47 (i) (J), the waiver of subrogation clause in this case, provides that each party to the lease is released from liability to the other "for any business interruption or any loss or damage to property occurring in the building (including the demised premises)," and makes no explicit reference to the presence or absence of insurance coverage for a given loss. This, however, should make no difference to the result, since, as the Court of

___

2. *See also Federal Ins. Co. v Honeywell, Inc.*, 243 AD2d 605, 606 (1997) (waiver of subrogation did not bar suit seeking recovery of portion of loss within deductible under insured's policy); *Periphery Loungewear v Kantron Roofing Corp.*, 190 AD2d 457, 460-461 (1993) (waiver of subrogation did not bar tenant's suit against landlord seeking to recover business interruption loss for which lease did not require insurance and for which tenant did not have coverage, although suit was barred by a different lease provision).

Appeals stated in *Kaf-Kaf*, "a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears" (90 NY2d at 660 [citation omitted]). Here, the context of article 47 (i) (J)—its appearance in an article captioned "Tenant Insurance Coverages," which otherwise deals exclusively with the tenant's insurance coverage requirements—indicates that article 47 (i) (J) is, consistent with its caption, only a waiver of subrogation clause, not a general exculpatory clause.

Instructively, in a prior case involving a waiver of subrogation clause that, like article 47 (i) (J), did not expressly limit its scope to insured losses, we construed the clause, in accordance with its context in the lease, to apply only to insured losses (*see 747 Third Ave. Corp. v Killarney*, 225 AD2d 375, 377 [1996]). Indeed, if article 47 (i) (J) were construed, without regard to its context, to apply to all claims, whether or not insured or subject to an insurance requirement under the lease, the clause apparently would violate General Obligations Law § 5-321, which declares "void . . . and wholly unenforceable" lease provisions that "exempt[ ] the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor . . . in the operation or maintenance of the demised premises" (*see Metropolitan Art Assoc. v Wexler*, 118 AD2d 548, 548 [1986] [holding void under General Obligations Law § 5-321 a lease provision waiving negligence claims for property damage "of the kind covered by standard fire insurance policies with extended coverage, *regardless of whether or not or in what amounts, such insurance is now or hereafter carried by the parties hereto, or either of them*" (emphasis added)]).

In arguing that article 47 (i) (J) bars this action, defendants rely heavily on this Court's recent decision in *Duane Reade v 405 Lexington, L.L.C.* (22 AD3d 108 [2005]), in which we held that a waiver of subrogation clause barred the tenant's claim against the landlord for business interruption damages. *405 Lexington*, however, does not support defendants' contention that a lease's insurance requirements are irrelevant to the scope of its waiver of subrogation clause. In giving effect to the waiver of subrogation clause in *405 Lexington*, we specifically noted that the section of the lease immediately preceding the waiver of subrogation required the tenant to obtain, among other kinds of coverage, business interruption insurance (*id.* at 112). Thus, defendants' reliance on *405 Lexington* is misplaced.

Articles 4 and 13

Defendants also argue that, insofar as Duane Reade seeks damages for its alleged business interruption losses, such claims

are barred by exculpatory clauses in articles 4 and 13 of the lease. We find that these arguments, although accepted by the motion court, are also without merit.

Article 4 (as previously indicated, in the printed portion of the lease) provides in pertinent part as follows: *"Except as specifically provided* in Article 9 or *elsewhere in this Lease,* there shall be no allowance to the Tenant for the diminu[tion] of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building . . . ." (Emphasis added.)

It appears that, in the absence of a provision specifically to the contrary "elsewhere in [the] Lease," article 4 would bar a business interruption claim based on the facts alleged in the complaint (*see Periphery Loungewear,* 190 AD2d at 461). Duane Reade correctly maintains, however, that a different provision of the lease in this case (unlike the lease in *Periphery Loungewear*) does "specifically provide[ ]" otherwise. Article 84 of the instant lease, found in the typewritten rider, provides in pertinent part: "In making repairs to the premises, *Owner shall not unreasonably interfere with the operation of Tenant's business"* (emphasis added). This provision, which, by the terms of article 4 itself, takes precedence over article 4 to the extent of any conflict, and also takes precedence, pursuant to articles 58 and 91, as part of the typewritten rider, plainly contemplates that Duane Reade will have a legal remedy in the event Reva's work on the building "unreasonably interfere[s] with the operation of Tenant's business." Accordingly, Duane Reade may seek damages for losses allegedly occasioned by any such "unreasonabl[e] interfere[nce]" that can be proven to have resulted from Reva's work on the roof (*see Union City Union Suit Co. v Miller,* 162 AD2d 101, 102, 104 [1990], *lv denied* 77 NY2d 804 [1991] [notwithstanding that the subject lease contained an exculpatory clause substantially identical to that of article 4 herein, this Court affirmed tenant's judgment based on interference with its use of the demised premises caused by landlord's building alterations, because another lease provision specifically provided that landlord's "alterations and repairs shall be made at such time so as not to unreasonably interfere with tenant's use of the demised premises"]).[3]

The third exculpatory provision of the lease on which

---

**3.** Duane Reade also contends that article 88 of the lease (obligating Reva to maintain the roof during the term of the lease) similarly overrides article 4's exculpatory clause in this case. Since we find that article 84 is dispositive,

defendants rely, in article 13, also does not bar Duane Reade's business interruption claim. Article 13 provides in pertinent part (emphasis added): "Owner may during the progress of any *work in the demised premises*, take all necessary materials and equipment into said premises without the same constituting an eviction *nor shall the Tenant be entitled* to any abatement of rent while such work is in progress *nor to any damages by reason of loss or interruption of business or otherwise.*" This provision, by its terms, is concerned with work performed "in the demised premises." In this case, the work in question was not performed "in the demised premises," but on the roof over the demised premises. Accordingly, article 13's exculpatory clause does not apply. Even if the work in question could be deemed to have been performed "in the demised premises," article 13, as part of the printed lease, would be overridden by the typewritten article 84. As previously discussed in relation to article 4, article 84 contemplates a remedy for "unreasonabl[e] interefere[nce]" with the tenant's business caused by the landlord's work, and, under articles 58 and 91, typewritten provisions of the lease take precedence over printed provisions to the extent of any conflict.

## Legal Sufficiency of Asserted Causes of Action

Since the complaint is not barred by the terms of the lease, we reach the question of whether the causes of action pleaded therein are legally sufficient, assuming the truth of the allegations on which such claims are based. At the outset, we note that, apart from their unavailing argument based on the aforementioned exculpatory clauses, defendants do not question the legal sufficiency of Duane Reade's fifth cause of action, for breach of contract against Reva only. Accordingly, the fifth cause of action is reinstated.

Turning to the remaining claims, we find that Duane Reade's causes of action for negligence, nuisance, and trespass are also legally sufficient. The negligence causes of action (the first, against Reva, and sixth, against F & S) are legally sufficient because defendants had a common-law duty, independent of any contractual obligation imposed by the lease, to exercise reasonable care in performing the work on the roof (which was for Reva's benefit) so as to avoid damaging the demised premises below and interfering with their use. The second and seventh causes of action (against Reva and F & S, respectively) suf-

---

we need not reach this contention. To the extent Duane Reade makes a similar contention concerning article 9 (concerning the effect of "fire or other casualty"), we need not reach it for the same reason.

ficiently allege a "recurrence of objectionable conduct" (*Domen Holding Co. v Aranovich*, 1 NY3d 117, 124 [2003], quoting *Frank v Park Summit Realty Corp.*, 175 AD2d 33, 34 [1991], *mod on other grounds* 79 NY2d 789 [1991]) to state a claim for nuisance. The third and eighth causes of action (against Reva and F & S, respectively) sufficiently allege that defendants committed a trespass upon the demised premises by causing water and debris to be deposited therein, without any right to do so (*see Stewart v State of New York*, 248 AD2d 761, 761-762 [1998], citing, inter alia, 104 NY Jur 2d, Trespass § 12). Accordingly, the first, second, third, sixth, seventh and eighth causes of action are also reinstated.

The motion court was correct, however, in dismissing the fourth cause of action, which sought relief against Reva for its alleged breach of the covenant of quiet enjoyment. To prevail on a cause of action for breach of the covenant of quiet enjoyment, a tenant "must show an ouster, or if the eviction is constructive [as claimed here], an abandonment of the premises" (*Dave Herstein Co. v Columbia Pictures Corp.*, 4 NY2d 117, 121 [1958]). Since Duane Reade admittedly never abandoned the demised premises, no constructive eviction occurred (*id.*; *see also Express Indus. Group v City of New York*, 4 AD3d 197, 198 [2004] [there was no constructive eviction "since plaintiff did not abandon the pier but chose instead to repair it"], citing *West Broadway Glass Co. v I.T.M. Bar*, 245 AD2d 232 [1997]). In the absence of a sufficient allegation of "an eviction, actual or constructive, there is no breach of the covenant of quiet enjoyment" (*Herstein*, 4 NY2d at 121). Accordingly, we affirm only so much of the order appealed from as dismissed the fourth cause of action. Concur—Tom, J.P., Friedman, Nardelli, Sweeny and Malone, JJ. [*See* 9 Misc 3d 1119(A), 2005 NY Slip Op 51663(U) (2005).]