■ SPECTRA AUDIO RESEARCH, INC., Appellant, v STEVE S. CHON et al., Defendants, and TIFFANY NAILS AT MADISON CORP., Respondent. [880 NYS2d 612]—

Order, Supreme Court, New York County (Debra A. James, J.), entered March 14, 2008, brought up for review pursuant to CPLR 5517 (b), the appeal from the prior order, same court and judge, entered December 17, 2007, which granted reargument and adhered to the prior order that had granted, inter alia, the cross motion of defendant Tiffany Nails at Madison Corp. for summary judgment dismissing the complaint, unanimously reversed, on the law, with costs, the cross motion denied and the complaint reinstated as against that defendant.

Spectra Audio Research, Inc. (Spectra),* executed a lease dated February 7, 1997 with Madison & 72nd Street Corporation (Madison) to lease the first floor of 903 Madison Avenue. On February 28, 2001, Tiffany Nails at Madison Corp. (Tiffany) leased space on the second floor of that building and hired defendants Nova Plumbing and Heating, Inc. (Nova) and Chon Engineering, P.C. (Chon) to install an auxiliary water line. On January 12, 2004, the line burst causing water to leak into Spectra's first-floor space.

Spectra's insurer, Hanover Insurance Company (Hanover), paid $376,066 to Spectra in satisfaction of its $540,195 insurance claim for the damages sustained as a result of the leak. On April 8, 2004 and January 14, 2005, Michael Goodrich, Spectra's president, executed subrogation receipts evidencing payment by Hanover in the amounts of $246,714 and $129,352 respectively. The receipts stated: "In consideration of and to the extent of said payment [Spectra] hereby subrogates [Hanover], to all of the rights, claims and interest which [Spectra] may have against any person or corporation liable for the loss mentioned above, and authorizes [Hanover] to sue, compromise or settle in [Spectra's] name . . . all such claims."

Spectra served a summons and complaint on February 7, 2006 against each of the defendants individually, Madison, Tiffany, Nova, and Chon, alleging negligence and damages in the amount of $561,230. The complaint specifically listed claims by Spectra against Madison, Spectra against Chon, Hanover against Nova, and Hanover against Tiffany.

On March 6, 2006, Madison answered the complaint and then, on January 24, 2007, moved for summary judgment to dismiss on the grounds that Spectra had not shown that Madison was negligent and hence, by the terms of its lease, Spectra waived liability for damages covered by insurance. In addition, Madison asserted that Spectra waived Hanover's subrogation rights against it in the antisubrogation clause of its lease. On May 15, 2006, Tiffany answered the complaint and, on February 7, 2007, cross-moved for partial summary judgment on the basis that the claim amount was speculative and unsupported.

A hearing was held on July 17, 2007 and in a decision on December 17, 2007, the motion court granted summary judgment severing the action as against Madison and Tiffany and dismissing the complaint against them stating that Spectra could not establish losses beyond $68,036. On January 3, 2008,

---

* Although Spectra subrogated its claims to its insurer, Hanover Insurance Company, Hanover, the real party in interest, is bringing the claim in Spectra's name pursuant to CPLR 1004.

Spectra moved to reargue the December 17 order to the extent the court dismissed the complaint as against Tiffany, emphasizing that Hanover was the party bringing the suit pursuant to CPLR 1004. It asserted that it was seeking its subrogated interests as well as Spectra's uninsured loss. Following the reargument hearing on March 11, 2008, the court issued an order granting reargument and adhering to its December 17, 2007 decision and order.

On appeal, Spectra argues that the motion court erred in concluding that Hanover may not bring a suit for Spectra's uninsured loss as well as compensation for the subrogated property damage claims.

The doctrine of subrogation " 'allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse' " (*Duane Reade v Reva Holding Corp.*, 30 AD3d 229, 232 [2006], quoting *Kaf-Kaf, Inc. v Rodless Decorations*, 90 NY2d 654, 660 [1997]). Further, CPLR 1004 authorizes Hanover to sue in Spectra's name as an exception to the "real party in interest" rule (*CNA Ins. Co. v Cacioppo Elec. Contrs.*, 206 AD2d 399, 400 [1994], citing *Point Tennis Co. v Irvin Indus. Corp.*, 63 AD2d 967 [1978]; *see McGuigan v Carillo*, 165 AD2d 811, 812 [1990]). The policy reason behind allowing an insurer to bring the case in the insured's name is to prevent "the prejudicial effect . . . which often results when it is disclosed to the jury that the loss was covered by insurance" (*CNA Ins. Co.*, 206 AD2d at 400, citing *Point Tennis Co. v Irvin Indus. Corp.*, 63 AD2d at 967; *see Krieger v Insurance Co. of N. Am.*, 66 AD2d 1025, 1026 [1978]).

As a threshold matter, we note that the antisubrogation clause and the holding in *Duane Reade* relied upon by the motion court are only applicable to Spectra's subrogated claims against Madison and not Spectra's claim against Tiffany because Tiffany is not a party to the lease between Madison and Spectra. *Duane Reade* involved a suit brought by a tenant against its landlord where the court held that the antisubrogation clause in the lease agreement between the two parties did not prevent "[the tenant] from suing the [landlord] to recover for a loss to the extent that such loss is not required by the parties' agreement to be covered—and, in fact, is not covered—by insurance" (*Duane Reade v Reva Holding Corp.*, 30 AD3d at 233). Because there is no antisubrogation agreement between Spectra and Tiffany, *Duane Reade* does not preclude Spectra from seeking its uninsured losses from Tiffany for damages above those paid by Hanover.

Spectra does not appeal that portion of the order severing and dismissing the complaint against Madison; therefore, we do not address the issue of *Duane Reade*'s effect on Spectra's claim against Madison.

Despite the inordinate confusion apparent in the transcripts and order concerning the identity of the plaintiff, this is a subrogation claim properly brought by Hanover. Thus, the issue is simply whether Hanover may bring the claim for the total amount of damages including the $376,066 paid to Spectra and Spectra's uncompensated damages.

The subrogation receipts issued by Spectra to Hanover, clearly assign "all of the rights, claims and interest which the undersigned may have against any person or corporation liable for the loss" and authorizes Hanover to "sue, compromise or settle in the undersigned's name." Thus, contrary to Tiffany's assertion, this receipt does not limit the assignment to the amount paid by Hanover to Spectra.

Tiffany's reliance on *Winkelmann v Hockins* (204 AD2d 623 [1994]) is misplaced. In that case, the court concluded, as a matter of contract construction, that the insured had not assigned all of his claims to his insurer and therefore remained a real party in interest as to his uncompensated damages (*id.* at 624 [stating that the insurer did "not have the authority to settle those claims which had not been paid by it" because the plaintiffs "*did not assign all of their claims* against the defendant" (emphasis added)]). Here, however, Spectra did assign all of its claims to Hanover, and Hanover may seek all of the compensation to which Spectra is entitled.

Spectra also asserts that the motion court erred in dismissing Spectra's claim against Tiffany on the grounds that Spectra did not produce sufficient proof that it was damaged above the amount it was paid by Hanover. We agree.

It is well settled that where there is a triable issue of fact, summary judgment should not be granted and the issue should be resolved at trial (*Trupo v Preferred Mut. Ins. Co.*, 59 AD3d 1044, 1045 [2009] [affirming that a triable issue of fact regarding damages precluded summary judgment]; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Moreover, " '[w]hile damages may not be determined by mere speculation or guess, evidence that, "as a matter of just and reasonable inference", shows their existence and the extent thereof will suffice, even though the result is only an approximation' " (*Hirschfeld v IC Sec.*, 132 AD2d 332, 336-337 [1987], *lv dismissed* 72 NY2d 841 [1988], quoting *Cristallina v Christie, Manson & Woods Intl.*, 117 AD2d 284, 295 [1986]).

There are three separate assessments of Spectra's damages. The motion court concluded that the plaintiff's experts had established losses of "only $68,036.43." However, the record reveals no explanation as to how the court arrived at that figure. Tiffany's accountant, Peter Kahn, who did not inspect the Spectra site to view the damage, prepared an affidavit estimating Spectra's losses at $95,003.

In opposition, Spectra submitted sworn affidavits assessing its losses as follows: Paul Mazzola, a professional salvor, for damaged inventory in the amount of $254,351; John Conlon, a professional insurance adjuster, for business personal property at $6,107, tools and small equipment at $1,030, computer equipment at $32,474, property of others at $10,249, emergency repairs at $14,965, debris removal at $3,210; and Joseph Balkunas, an accountant who calculated the loss of business income at $129,352. Spectra also produced the sworn testimony of Michael Goodrich, its president, which indicates that the cost to rebuild the store was $80,000. Since these losses of $531,738 total well in excess of Tiffany's estimate of only $95,003, Spectra has produced evidence in admissible form requiring trial on an issue of material fact (*Zuckerman*, 49 NY2d at 562). Concur— Andrias, J.P., Friedman, Buckley, Catterson and Acosta, JJ.