■ 45 BROADWAY OWNER LLC, Respondent, v NYSA-ILA PENSION TRUST FUND, Appellant. [970 NYS2d 1]—

Judgment, Supreme Court, New York County (Paul Wooten, J.), entered September 6, 2012, awarding plaintiff-landlord the total amount of $166,013.96, and bringing up for review an order, same court and Justice, entered August 27, 2012, which granted plaintiff's motion for summary judgment in its favor, dismissed defendant-tenant's affirmative defenses, and denied defendant's cross motion for summary judgment dismissing the complaint, unanimously reversed, on the law, with costs, the judgment vacated, plaintiff's motion denied, and defendant's cross motion granted. The Clerk is directed to enter judgment dismissing the complaint. Appeal from the foregoing order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Plaintiff is the owner and landlord of a building located at 45 Broadway in Manhattan, and defendant was a commercial tenant in the building. When defendant's predecessor was the building tenant, it installed a supplemental HVAC system; that system connected to the building's water risers and remained in operation after defendant took possession of the premises in or around March 2002.

The parties' lease addressed their responsibilities in the event of damage to the premises. Specifically, in section 7.03 of the lease, the parties agreed that their insurance policies would each contain an endorsement in which their respective insurance companies would "waive subrogation or permit the insured, prior to any loss, to waive any claim it might have against the other." Further, section 7.04 of the lease provided, "each party releases the other with respect to any claim (including a claim for negligence) which it might otherwise have against the other party for loss, damage or destruction with re-

spect to its property *by fire or other casualty* . . . occurring during the terms of this Lease" (emphasis added).

In April 2010, plaintiff informed all building tenants that building management intended to shut down the building's water condenser, and therefore, that tenants should shut down any supplemental HVAC systems. Immediately after the "drain down" of the building's water, the lobby flooded. Building personnel discovered that a rusted and corroded pressure gauge on defendant's supplemental HVAC system had burst off a supply pipe, allowing water to gush out. The flood damaged several floors of the building, as well as the elevator, mezzanine, lobby, and basement.

The repairs and restoration to the building cost plaintiff $76,760.14, and plaintiff gave injured tenants around $60,000 worth of monetary concessions to compensate for their damages. Thus, plaintiff's total damages from the flood came to around $136,055.22, not including legal fees and costs. Plaintiff commenced this action, alleging that defendant failed to meet its lease obligation to maintain the supplemental HVAC system and is therefore responsible for the damages resulting from the flood.

After discovery, plaintiff moved for summary judgment and defendant cross-moved for the same relief. The IAS court granted plaintiff's summary judgment motion in its entirety, denied defendant's cross motion, and set the matter down for a hearing before a special referee to determine the amount of plaintiff's counsel fees. The court ultimately entered a judgment in plaintiff's favor in the amount of $166,013.96.

We find that in the context of the relevant lease provision, the concept of "casualty" does, in fact, encompass the flood resulting from the rusted gauge on the supplemental HVAC system, and thus, that the IAS court erred in awarding judgment against defendant. To begin, as noted above, in section 7.04 of the lease, each party releases the other with respect to claims for damage, including damage caused by a party's negligence. This clause constitutes an enforceable reflection of the parties' decision to allocate the risk of liability for these claims to third parties through the device of insurance—a choice that contracting parties are permitted to make as long as their intent to do so is clear and unequivocal (*see Great N. Ins. Co. v Interior Constr. Corp.*, 18 AD3d 371, 372 [1st Dept 2005], *affd* 7 NY3d 412 [2006]; *Periphery Loungewear v Kantron Roofing Corp.*, 190 AD2d 457, 460 [1st Dept 1993]).

Even so, under the language of lease section 7.04, the releases will be effective only if the flood constitutes damage by "fire or

other casualty." Citing 1 *Friedman on Leases* § 9.4 (5th ed), plaintiff argues that the flood in this case was not, in fact, a "casualty" because it was not an "act of God," but rather, an act of human beings—namely, the failure to perform maintenance on the HVAC system, leading to the rusted and corroded pressure gauge and the ensuing flooding.

The lease's language, however, does not suggest that "casualty" is an event resulting only from an "act of God." Nor under the relevant case law is the definition so limited. To be sure, we have previously noted that the word "casualty" may be defined as an "accident" or an "unfortunate occurrence" (*see IQ Originals v Boston Old Colony Ins. Co.*, 85 AD2d 21, 22 [1st Dept 1982], *affd* 58 NY2d 651 [1982]). Certainly, the flood and resulting damage to the building can fairly be classified under either one of those categories.

What is more, where a clause is unambiguous, contract language and terms are to be given their plain and ordinary meaning (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *TDX Constr. Corp. v Dormitory Auth. of State of N.Y.*, 306 AD2d 115, 116 [1st Dept 2003]). Here, the lease provides that the parties agreed on mutual releases in case of damage "by fire or other casualty." In light of this phrasing, in which "other casualty" is placed in the same category as "fire," it cannot be said that the word "casualty" excludes events resulting from human error. On the contrary, a fire might have myriad causes, many of which do result from human error. However, the parties did not restrict the types of fires that would fall under the release— for example, by stating that only fires caused by severe weather or other natural causes would trigger a release from liability. Accordingly, the phrase "fire or other casualty," as construed by an ordinary business person, would describe an event, rather than the cause of that event.

A plain reading of section 7.04 also shows that if defendant negligently caused a fire in the building, plaintiff could not look to defendant to recover for the resulting property damage, but would have to look to its own insurer for coverage. If the provision cannot be read to limit the meaning of "fire" to acts of God not involving negligent actions, then "other casualty"—an event that the lease places in the same category as "fire"—also cannot be interpreted to include that limitation. Thus, contrary to plaintiff's argument, section 7.04, read as a whole, makes clear that the "fire or other casualty" clause does not apply only to events free from negligence.

Plaintiff, relying on the decision by the United States Court of Appeals for the Second Circuit in *Fay v Helvering* (120 F2d

253 [2d Cir 1941]), argues that even if a negligently caused flood could be a casualty, a flood resulting from gradual damage, such as corrosion of the pipe, cannot be one. This argument is not persuasive. While the damage caused by corrosion would not itself be considered a casualty, a sudden and unexpected flood such as the one that occurred here does, in fact, fall under the definition of "casualty," even if gradual corrosion triggers the sudden event.

Finally, despite plaintiff's assertions otherwise, a finding that "fire and other casualty" encompasses claims based on negligence does not render meaningless certain other sections of the lease. The other lease provisions address defaults or negligent acts that do not rise to the level of fire or other casualty, and they are simply subject to the exception set forth in section 7.04.

Accordingly, defendant's timely filed cross motion for summary judgment is granted, and the claims are dismissed. Concur—Friedman, J.P., Acosta, Moskowitz, Manzanet-Daniels and Clark, JJ.